UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL GENERAL INSURANCE COMPANY,

                    Plaintiff,                    20-cv-3876 (JGK)

            - against -                    MEMORANDUM OPINION AND
                                                     ORDER

TEUFIK RADONCIC ET AL.,

                    Defendants.

---

JOHN G. KOELTL, District Judge:

     This declaratory judgment action arises out of an insurance
coverage dispute relating to an action in the New York State
Supreme Court, Bronx County (the "Underlying Action"). In the
Underlying Action, Ravi Sunil Woli Mohamed and Nendin Mohamed
(the "Mohameds") sued Teufik Radoncic and Adela Radoncic (the
"Radoncics") for negligence and violations of New York Labor Law
relating to injuries sustained by Mr. Mohamed in a construction
accident at premises owned by the Radoncics (the "Premises"). In
the present action, the plaintiff, National General Insurance
Company ("NGIC"), seeks a declaratory judgment pursuant to 28
U.S.C. § 2201 that it has no duty to defend or cover the claims
asserted in the Underlying Action under the insurance policy
that it issued to the Radoncics (the "Policy"), and that it
properly rescinded the Policy. Subject matter jurisdiction is
asserted based on diversity of citizenship under 28 U.S.C. §
1332(a)(1).

1

NGIC now moves for summary judgment to rescind the Policy as void ab initio, or, in the alternative, to disclaim coverage under the Policy for claims asserted in the Underlying Action. ECF No. 54. The Radoncics cross-move for partial summary judgment, seeking dismissal of NGIC's claims for rescission and for disclaimer. ECF No. 62.

Despite the certitude with which the plaintiff and the defendants assert that the terms of the Policy unambiguously support their respective positions, issues of fact abound with respect to the interpretation of various provisions of the Policy and the parties' actions such that summary judgment must be denied for all parties. For the reasons that follow, both motions for summary judgment are **denied.**

I.

The following facts are taken from the evidence submitted to the Court.

In 2017, the Radoncics purchased the Premises in Whitestone, New York. Pl.'s Rule 56.1 Statement ¶ 11, ECF No. 59. The Radoncics' intent was to make the Premises their "forever" home, id. ¶ 61, and construction or renovation work on the Premises began in the middle of September 2018, Maxwell Decl. Ex. K, at 33, ECF No. 55-11. Mr. Radoncic's construction company, R & T Construction, NY, Inc. ("R&T"), was tasked with the work on the Premises. Id. at 16. By November 2018, R&T's

2

work on the Premises was well underway, and the original

dwelling on the Premises had been all but completely demolished,

with only the "foundation and footprint" remaining. See Pl.'s

Rule 56.1 Statement ¶¶ 16-17, ECF No. 59; Defs.' Am. Rule 56.1

Statement ¶¶ 62-65, Schreiber Decl., ECF No. 69-1.

Given the nature of this construction or renovation work,

the Radoncics had not moved onto the Premises as of November

2018; their intent was to move to the Premises when the work was

complete. See Pl.'s Rule 56.1 Statement ¶ 12, ECF No. 59. Until

such time, the Radoncics lived at another property in Astoria,

New York (the "Astoria Property"), where they had lived since

1996. See id. ¶ 61; Brownsey Aff. Ex. C, ECF No. 56-3.

Sometime during early November 2018, the Radoncics retained

an insurance broker, Bayrock Insurance Agency LLC ("Bayrock"),

to procure homeowner's insurance for the Premises. See Pl.'s

Rule 56.1 Statement ¶ 19, ECF No. 59. On November 12, 2018,

relying on information provided to them by the Radoncics,

Bayrock completed a homeowner's insurance application for the

Radoncics (the "Bayrock Application"). See id. ¶¶ 20-23; Maxwell

Decl. Ex. O Pt. 1, at 13-18, ECF No. 55-16. As relevant here,

the Bayrock Application represented that the Premises were

owner-occupied, and that the Premises were the Radoncics'

primary residence. Id. at 14. The Bayrock Application also

represented that the Premises were not undergoing a "course of construction." Id.[1]

The same day, Bayrock forwarded the Bayrock Application to Risk Placement Services ("RPS"), an insurance wholesaler. See Pl.'s Rule 56.1 Statement ¶ 24, ECF No. 59; Maxwell Decl. Ex. N, at 31, ECF No. 55-15. RPS' role was to contact different insurance companies on behalf of the Radoncics and compile a list of coverage options for the Premises. See id. at 31-33. On November 12, 2018, relying on the information in the Bayrock Application, RPS entered the Radoncics' data into NGIC's automated web-based platform (the "NPS System"). See Pl.'s Rule 56.1 Statement ¶¶ 27-28, ECF No. 59; Hammond Aff. ¶ 9, ECF No. 57.

Like the Bayrock Application, the information inputted by RPS into the NPS System (in application format, the "RPS Application") represented that the Premises were owner-occupied — as opposed to tenant-occupied, unoccupied, or vacant — and that the Premises were the Radoncics' primary residence — as opposed to their secondary, seasonal, or farm residence. See Hammond Aff. Ex. 2, at 223, ECF No. 57-2. Like the Bayrock Application, the RPS Application also represented that the Premises were not undergoing a "course of construction," there

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, capitalizations, and internal quotation marks in quoted text.

being no mark next to "builders risk," "renovation," or

"reconstruction":

| CONSTRUCTION TYPE | % | COURSE OF CONSTRUCTION |
|---|---|---|
| MASONRY VENEER | | BUILDERS RISK |
| X  FRAME | | RENOVATION |
| MASONRY | | RECONSTRUCTION |

Id.

Based on the information inputted by RPS, NGIC, through the

NPS System, approved the Premises as eligible for NGIC's

homeowner's insurance, and generated a quote for coverage that

RPS returned to Bayrock. See Pl.'s Rule 56.1 Statement ¶¶ 27-28,

ECF No. 59; see also Hammond Aff. ¶¶ 9-12, ECF No. 57. On

November 12, 2018, Bayrock sent the Radoncics a copy of NGIC's

proposal, which the Radoncics approved on the same day. See

Maxwell Decl. Ex. O Pt. 1, at 29-36, ECF No. 55-16; id. at 25.

The following day, the Radoncics signed the RPS Application,

thereby attesting to the accuracy of the information provided

therein. See id. at 24-28; Pl.'s Rule 56.1 Statement ¶ 30, ECF

No. 59. The Policy became effective on November 13, 2018. See

Brownsey Aff. Ex. A, ECF No. 56-1.

As relevant here, the Policy provided that,

> if a claim is made or a suit is brought against an
> insured for damages because of "bodily injury" or
> "property damage" caused by an "occurrence" to which
> this coverage applies, [NGIC] will . . . pay up to [its]
> limit of liability for the damages for which an "insured"
> is legally liable . . . [and] provide a defense at
> [NGIC's] expense by counsel of [NGIC's] choice . . . .

[NGIC] may investigate and settle any claim or suit that [it] decide[s] is appropriate. . . .

Id. at 34. However, the Policy included an exclusion (the "Insured Location Exclusion") that provided that the foregoing coverage would not apply to claims for "'bodily injury' or 'property damage' arising out of a premises . . . that is not an 'insured location.'" Id. at 36. As relevant here, the Policy defined "insured location" as (a) the "residence premises," or (f) "land owned by or rented to an 'insured' on which a one or two family dwelling is being built as a residence for an 'insured.'" Id. at 20-21. "Residence premises," in turn, was defined as "the one family dwelling where you reside," "the two family dwelling where you reside in at least one of the family units," or "that part of any other building where you reside[,] and which is shown as the 'residence premises' in the Declarations." Id. at 21. The Policy also stated, in unrelated sections, that "a dwelling being constructed is not considered vacant." See id. at 26, 27, 48, 49, 62.

On November 13, 2018, R&T hired Mr. Mohamed to perform the construction or renovation work on the newly insured Premises. Maxwell Decl. Ex. K, at 44, 80, ECF No. 55-11. The following

day, November 14, 2018, Mr. Mohamed claims to have sustained a
work-related injury at the Premises. Id.

On or about December 26, 2018, "in accordance with NGIC's
usual course of business when underwriting risks," NGIC
inspected the Premises. Hammond Aff. ¶ 30, ECF No. 57. NGIC's
inspectors determined that "the original home ha[d] been
removed," and that "the lot was empty and inaccessible." Hammond
Aff. Ex. 3, ECF No. 57-3. NGIC thus canceled the Policy on
January 30, 2019, over two months after Mr. Mohamed claims to
have been injured at the Premises. See Hammond Aff. Ex. 4, ECF
No. 57-4. The notice of cancelation sent to the Radoncics
explained that insurance was "not acceptable due to the lack of
cooperation from the insured on loss control matters materially
affecting insurability of the risk. Specifically, insured has
failed to comply with the company's requirement to conduct an
inspection of the dwelling insured." Id. NGIC claims that at the
time of this cancelation, it was unaware that the Radoncics had
never resided at the Premises, and that the dwelling on the
Premises had been all but demolished — and that construction or
renovation work had commenced — prior to the date on which the
Radoncics applied for coverage. Hammond Aff. ¶ 33, ECF No. 57.
The Radoncics claim that NGIC was, at least, on constructive
notice of these facts. See Defs.' Am. Rule 56.1 Statement ¶¶ 62–
65, Schreiber Decl., ECF No. 69-1. On February 11, 2019, NGIC

issued a refund of $304.64 in premiums to the Radoncics. Hammond Aff. ¶ 8, ECF No. 66.

On October 28, 2019, the Mohameds began the Underlying Action against the Radoncics, bringing claims for negligence and various violations of New York Labor Law. See Pl.'s Rule 56.1 Statement ¶ 9, ECF No. 59. NGIC received notice of the Underlying Action on January 8, 2020. Id. ¶ 41. NGIC soon began investigating the Radoncics' potential coverage under the Policy. Id. ¶ 42. As relevant here, NGIC obtained a signed and notarized affidavit of residency (the "Affidavit of Residency") from the Radoncics dated January 21, 2020, in which Mr. Radoncic stated that he and his family had lived at the Astoria Property for the past 24 years, and that he had not lived at any other property for at least three years. Id. ¶¶ 43–46; see Brownsey Aff. Ex. C, ECF No. 56-3. It was therefore confirmed that the Radoncics did not reside at the Premises at the time that they applied for insurance. See id. Through its investigation of the Radoncics' coverage, NGIC also confirmed that the original dwelling had been essentially demolished — and that the renovation or construction work on the Premises had begun — prior to the issuance of the Policy. Pl.'s Rule 56.1 Statement ¶¶ 59–60, 62–63, ECF No. 59; Hammond Aff. ¶ 39, ECF No. 57.

Brett Hammond, an underwriting manager at NGIC, testified at his deposition and swore in an affidavit that, had NGIC known

that the Premises were not owner-occupied as the Radoncics'
primary residence, that the dwelling on the Premises had been
essentially demolished, and that the Premises were undergoing
construction on renovation in November 2018, "it would not have
issued the Policy." Id. ¶¶ 1, 42; see Schreiber Decl. Ex. J, at
30, ECF No. 69-1. NGIC's Underwriting Guidelines for Homeowners
(the "Guidelines") provide that vacant lots, and dwellings under
construction, are ineligible for coverage. Hammond Aff. Ex. 1,
at 2, 4, ECF No. 57-1. However, the Guidelines do not explicitly
provide that properties undergoing renovations, or properties
that are not an insured's primary residence, are barred from
coverage. See id.; see also Schreiber Decl. Ex. J, at 37–38, 70,
ECF No. 69-1.

On February 3, 2020, NGIC notified the Radoncics by letter
that it was rescinding the Policy because the Radoncics had
"failed to disclose, omitted and/or provided false or misleading
information" in their application for insurance. Hammond Aff.
Ex. 5, ECF No. 57-5. According to NGIC, the Radoncics had
inaccurately "stated that the insured dwelling was Owner
Occupied as a Primary Residence and that no construction or
renovations existed at time of application. Our investigation
revealed that major work on the dwelling had commenced before

our policy's inception date and was ongoing at the time of application." Id.

On February 5, 2020, NGIC also issued a disclaimer of coverage (the "Disclaimer") for the Underlying Action. See Brownsey Aff. Ex. D, ECF No. 56-4. The Disclaimer noted that the Underlying Action was excluded from coverage because, among other things, the Premises did not constitute an "insured location" under NGIC's Policy. Id. However, the Disclaimer made clear that NGIC would provide a "courtesy defense" to the Radoncics "while [NGIC] commences legal action to confirm the rescission and coverage denial." Id. A refund of the remaining $826.00 in premiums was issued to the Radoncics on February 12, 2020. See Hammond Aff. ¶ 9, ECF No. 66.

On May 19, 2020, NGIC brought this action against the Radoncics and the Mohameds. ECF No. 1. On July 25, 2020, the Radoncics answered the complaint, and brought a counterclaim against NGIC. ECF No. 20. On October 1, 2021, NGIC moved for summary judgment. ECF No. 54. On October 29, 2021, the Radoncics cross-moved for partial summary judgment. ECF No. 62.

## II.

The standard for granting summary judgment is well established. The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs.,
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's
task at the summary judgment motion stage of the litigation is
carefully limited to discerning whether there are any genuine
issues of material fact to be tried, not to deciding them. Its
duty, in short, is confined at this point to issue-finding; it
does not extend to issue-resolution." Id. at 1224. The moving
party bears the initial burden of "informing the district court
of the basis for its motion" and identifying the matter or
matters that "it believes demonstrate the absence of a genuine
issue of material fact." Celotex, 477 U.S. at 323. The
substantive law governing the case will identify those facts
which are material. Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986).

In determining whether summary judgment is appropriate, the
Court must resolve all ambiguities and draw all reasonable
inferences against the moving party. See Matsushita Elec. Indus.
Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary
judgment is improper if there is "any evidence in the record
from any source from which a reasonable inference could be drawn
in favor of the nonmoving party." See Chambers v. TRM Copy Ctrs.
Corp., 43 F.3d 29, 37 (2d Cir. 1994). "Where there are cross-
motions for summary judgment, the Court must assess each of the

11

motions and determine whether either party is entitled to judgment as a matter of law." Freedom of Press Found. v. Dep't of Just., 493 F. Supp. 3d 251, 259 (S.D.N.Y. 2020).

### III.

### A.

NGIC first moves for summary judgment on the ground that it is entitled to rescind the Policy as void ab initio. The Radoncics cross-move for partial summary judgment on the ground that NGIC is not entitled to rescind the Policy.

New York Insurance Law § 3105 provides that, if an insurance policy is issued in reliance on a material misrepresentation, the insurer has the right to rescind the policy. See Zilkha v. Mut. Life Ins. Co. of N.Y., 732 N.Y.S.2d 51, 52 (App. Div. 2001). The statute defines "misrepresentation" as a false "statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). A misrepresentation is "material" if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such a contract." Id. § 3105(b).

Materiality is ordinarily a question of fact that should be submitted to a jury. Peckman v. Mut. Life Ins. Co. of N.Y., 509

N.Y.S.2d 336, 338 (App. Div. 1986). However, "where the evidence concerning materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." Id. A finding of materiality as a matter of law may be based on evidence such as sworn statements and testimony from an insurer's underwriters, so long as such statements are supported by documentary evidence concerning the insurer's underwriting practices, such as its underwriting manuals, rules, or bulletins that pertain to insuring similar risks. See Carpinone v. Mut. of Omaha Ins. Co., 697 N.Y.S.2d 381, 383-84 (App. Div. 1999).

In this case, NGIC proffers three possible representations by the Radoncics that it argues entitles it to rescind the Policy under New York Insurance Law § 3105: (1) the Premises were owner-occupied; (2) the Premises were being used as the Radoncics' primary residence; and (3) the Premises were not undergoing construction. These are considered in turn.

**1.**

NGIC first argues that the Radoncics materially misrepresented the occupancy of the Premises. NGIC argues that the Radoncics' representation that the Premises were owner-occupied — as opposed to tenant-occupied, unoccupied, or vacant — constituted a material misrepresentation, because such representation is false as a matter of fact, and induced NGIC to

13

issue a policy that it would not have issued had it known the truth.

Contrary to NGIC's argument, summary judgment on this issue is not warranted at this stage, because there are issues of fact as to whether the alleged misrepresentation that the Premises were owner-occupied was material. NGIC argues that the Premises were plainly vacant and therefore it was a misrepresentation to allege that they were owner-occupied. The Guidelines, together with Hammond's testimony and sworn affidavit, make plain that vacant lots are wholly ineligible for coverage under NGIC's policies. However, it is not clear that the Premises in fact qualify as "vacant" under the Guidelines. In particular, NGIC's Policy states, at multiple places, that "a dwelling being constructed is not considered vacant." See Brownsey Aff. Ex. A, at 26, 27, 48, 49, 62, ECF No. 56-1. Policy language may be relevant to determine whether a misrepresentation is material. See, e.g., Great Am. Ins. Co. v. Zelik, 439 F. Supp. 3d 284, 287-88 (S.D.N.Y. 2020). There are therefore genuine issues of material fact as to whether the Radoncics' alleged misrepresentation was material.

### 2.

NGIC next argues that the Radoncics' representation that they were using the Premises for primary — as opposed to for secondary, seasonal, or farm purposes — was both false as a

matter of fact and materially false within the meaning of
§ 3105. But here, too, there are issues of fact as to whether
this representation was material as a matter of law. There is no
documentary evidence — for example, a provision in the
Guidelines that only primary residences are eligible for
coverage — that supports the claim that NGIC would not have
issued the Policy to the Radoncics had it known the Premises
were not their primary residence. Without such evidence, NGIC
cannot meet its burden of establishing materiality as a matter
of law.[2] Nonetheless, Hammond's affidavit and testimony are
sufficient to establish that there is at least a genuine issue
of material fact as to whether this misrepresentation was
material. See Great Am. Ins. Co. v. Zelik, No. 19-cv-1805, 2020
WL 85102, at *4 (S.D.N.Y. Jan. 6, 2020), reconsideration granted
in part on other grounds, 439 F. Supp. 3d 284 (S.D.N.Y. 2020).
Both parties' arguments in favor of summary judgment on this
issue are accordingly rejected.

---

[2] Moreover, NGIC could not establish a material misrepresentation as a matter
of law on this issue because the usage question on the RPS Application was
ambiguous. Whether a question on an insurance application form is ambiguous
is a question of law for the Court. Garcia v. Am. Gen. Life Ins. Co., 695
N.Y.S.2d 420, 421 (App. Div. 1999). If a question is found to be ambiguous to
a "reasonable person in the insured's position," and a reasonable person
might have interpreted the question in the same way as the insured, an answer
to the ambiguous question may not form the basis of a claim of
misrepresentation by the insurance company. Id. Here, the question was
reasonably ambiguous. The option of primary residence was chosen rather than
secondary, seasonal, or farm residence. As Hammond's testimony makes clear,
there was not a better option for the Radoncics to select. See Schreiber
Decl. Ex. J, at 50, ECF No. 69-1.

## 3.

Finally, there are genuine issues of fact as to whether the Radoncics' misrepresentation that the Premises were not undergoing construction or renovation was material under New York law. NGIC argues that there can be no doubt that this misrepresentation was material, because NGIC's Guidelines, and Hammond's testimony and affidavit, make clear that properties under construction were ineligible for coverage under NGIC's policies. Furthermore, by the Radoncics' own admissions, the original dwelling had been all but demolished, with only the "foundation and footprint" remaining, and the Radoncics were "building a one family dream home for them to live in." Defs.' Am. Rule 56.1 Statement ¶¶ 52, 62–65, Schreiber Decl., ECF No. 69-1 (emphasis added).

However, the Radoncics' argument that the Premises were undergoing "renovations" not "construction," and that there is nothing in the Guidelines that bars the issuance of coverage to properties undergoing renovations, is sufficient to raise a triable issue of fact. It is true that the RPS Application could be construed as implying that "renovations" are treated as part of the broader category of "construction" work, because the term "renovation" is listed under "course of construction." However, Hammond's testimony that the Guidelines do not explicitly bar coverage for properties undergoing renovations — in contrast to

16

his testimony that there is an explicit bar for properties
undergoing construction — plausibly supports the alternate
proposition that there is a meaningful distinction between
"construction" and "renovation" under the Policy, and that the
bar to properties undergoing construction does not necessarily
include properties undergoing renovation. Relatedly, there are
issues of fact as to whether the work at the Premises is best
categorized as "construction" or "renovation." The Policy does
not define the terms, and there are genuine issues of fact as to
their meaning in this context. Neither party is entitled to
summary judgment at this time.

**B.**

The Radoncics argue that, even if there was a material
misrepresentation, NGIC is precluded by waiver or estoppel from
rescinding the Policy.[3]

**1.**

"Waiver applies when an insurance company acts in a way
that demonstrates a voluntary and intentional relinquishment of
a known right." Nat'l Specialty Ins. Co. v. 218 Lafayette St.
Corp. LLC, No. 06-cv-4210, 2008 WL 629994, at *6 (S.D.N.Y. Mar.
10, 2008). Under New York law, an insurance company waives its
right to bring a claim rescinding an insurance policy if it

---

[3] The Radoncics also argue that NGIC is precluded by the doctrine of unclean
hands from rescinding the Policy. However, there is no evidence
substantiating this argument.

17

"fails to act within a reasonable amount of time after learning of the misrepresentation." See id. Constructive knowledge of the grounds for rescission is sufficient to place an insurer on notice promptly to seek rescission. See Zelik, 2020 WL 85102, at *5. Contrary to NGIC's argument, the promptness requirement, as a matter of waiver, demands no showing of prejudice. See U.S. Liab. Ins. Co. v. WW Trading Co., No. 16-cv-3498, 2018 WL 6344641, at *8 (E.D.N.Y. Sept. 28, 2018) ("Contrary to what [the insurer] argues, it is irrelevant whether the insured suffered prejudice."), aff'd, 813 F. App'x 636.[4]

In this case, there are genuine issues of material fact as to whether NGIC should be barred by waiver from rescinding the Policy. On the one hand, it is plain that NGIC's inspectors examined the Premises on or about December 26, 2018, saw that the original home had been removed, chose only to cancel the Policy on January 30, 2019, and decided — over one year after the cancelation and over one year after Mr. Mohamed was allegedly injured at the Premises — to rescind the Policy in

---

[4] At least one New York court has found that an insurance company waives its right to rescind when it opts to cancel, instead of rescind, its policy with full knowledge of the grounds for rescission. See Stein v. Sec. Mut. Ins. Co., 832 N.Y.S.2d 679, 681-82 (App. Div. 2007) (concluding that although defendant insurer "could have rescinded [the insured's] policy" based on material misrepresentations in the application for insurance, it was not free to do so because it "chose to cancel [the] policy as of a future date rather than void it from its inception" with knowledge of the misrepresentation "in hand"). This issue is better decided after trial. See Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., No. 01-cv-8434, 2009 WL 590710, at *3 (E.D.N.Y. Mar. 3, 2009).

February 2020. This would appear to be unreasonable delay. Cf.
Asset Mgmt. Assocs. of N.Y., Inc. v. Emerson Telecomm. Prod.
LLC, No. 08-cv-2506, 2011 WL 318100, at *4 (E.D.N.Y. Jan. 25,
2011) ("Rescission claims have consistently been dismissed due
to failure to seek the relief in less than one year."
(collecting cases)). On the other hand, NGIC maintains that the
inspection of the Premises in December 2018 did not put it on
sufficient notice of the grounds for rescission, because the
inspection did not make clear that the Radoncics had
misrepresented the status of the Premises at the time that they
submitted the RPS Application over one month earlier. NGIC
further maintains that it spent the following year investigating
the issue, and therefore that its delay was not unreasonable.
Cf. Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan,
77 F.3d 48, 53 (2d Cir. 1996) (recognizing that insurers need
"reasonable time to investigate" claims prior to rescission).
Ultimately, the evidence is not clear whether NGIC's delay in
rescinding the Policy was unreasonable. Summary judgment on this
issue is accordingly precluded. See Cont'l Cas. Co. v. Marshall
Granger & Co., LLP, 6 F. Supp. 3d 380, 396-97 (S.D.N.Y. 2014)
(concluding that summary judgment on the issue of unreasonable
delay was not warranted because the parties disagreed over when
the insurer obtained sufficient knowledge of the facts to
justify rescission, and "[t]here is no bright-line rule as to

when the length of a rescission investigation becomes unreasonable or how long the insurer is entitled to consider whether or not to pursue rescission after completing its investigation"), aff'd sub nom. Cont'l Cas. Co. v. Boughton, 695 F. App'x 596 (2d Cir. 2017).

The Court therefore cannot decide as a matter of law whether NGIC waived its right to rescind the Policy.[5]

### 2.

To the extent that the Radoncics additionally argue that NGIC's unreasonable delay constitutes estoppel, they must also demonstrate that they were prejudiced by such delay. See James River Ins. Co. v. Power Mgmt., Inc., 55 F. Supp. 3d 446, 455-56 (E.D.N.Y. 2014). "Estoppel applies where an insurer acts in a manner inconsistent with a lack of coverage and the insured reasonably relies on those actions to its detriment." 218 Lafayette St., 2008 WL 629994, at *7; see also James River, 55 F. Supp. 3d at 455 ("An insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably

---

[5] The Radoncics' additional argument as to affirmative waiver — that NGIC continued to accept the Radoncics' premiums, and that this constitutes waiver of its right to rescind the Policy — is unpersuasive and belied by the evidence. The evidence in the record clearly establishes that NGIC did, in fact, return the premiums. The Radoncics' claims to the contrary are without basis in fact.

delays in disclaiming coverage and the insured suffers prejudice as a result of that delay.").

In this case, there are material issues of fact as to whether NGIC is — additionally and separately from waiver — estopped from rescinding the Policy because of its allegedly unreasonable delay. In particular, the Radoncics have raised genuine issues of material fact as to whether they were prejudiced by any delay. The Radoncics argue that they were prejudiced because they were deprived of the opportunity to resolve the Underlying Action "immediately and directly with the Mohameds when a settlement might have been viable," or because they "lost the opportunity to set aside reserve funds to pay for litigation and potential judgment." Defs.' Reply 7, ECF No. 69. The credibility of these proffers of prejudice — particularly in light of the fact that NGIC continues to provide the Radoncics with a courtesy defense in the Underlying Action — are issues of fact reserved for the jury. See James River Ins., 55 F. Supp. 3d at 457 ("[B]ecause the question of the existence of prejudice requires a highly fact-sensitive analysis, it is not one that can be determined on the record presently before the court.").

Accordingly, neither party is entitled to summary judgment on the applicability of the defenses of waiver or estoppel.

**IV.**

As an alternative to rescinding the Policy, NGIC argues that the Insured Location Exclusion applies and precludes coverage for the Underlying Action.

"To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." MIC Prop. & Cas. Corp. v. Avila, 886 N.Y.S.2d 186, 187 (App. Div. 2009); accord Seaboard Sur. Co. v. Gillette Co., 476 N.E.2d 272, 275 (N.Y. 1984). "Any ambiguity in the exclusion is to be construed against the insurer." Avila, 886 N.Y.S.2d at 187. "The test for ambiguity is whether the language in the insurance contract is susceptible of two reasonable interpretations. The focus of the test is on the reasonable expectations of the average insured upon reading the policy." Id. at 187-88.

In this case, NGIC argues that the Insured Location Exclusion "unambiguously applies" because the Premises do not qualify as an "insured location." Pl.'s Mot. 23, ECF No. 58. But this is only true if "insured location" means "residence premises," which is only one possible meaning of the term in the Policy. The Policy also provides that "insured location" may mean "land owned by . . . an 'insured' on which a one or two family dwelling is being built as a residence for an 'insured.'"

22

Brownsey Aff. Ex. A, at 20-21, ECF No. 56-1. NGIC responds that the latter definition is inapplicable in this case, because "NGIC issued the Policy to provide coverage for a residential property that included an owner-occupied, non-vacant dwelling." Pl.'s Reply and Opp. 16, ECF No. 68. But there are at least genuine issues of material fact as to whether this is true. NGIC's argument that the Insured Location Exclusion unambiguously applies to the Underlying Action is therefore rejected, and summary judgment is denied.

The Radoncics' cross-motion on this issue must also be denied. In particular, given the Radoncics' insistence in the briefing that the dwelling on the Premises was not being constructed or built, but was instead merely being renovated, the Radoncics have not met their burden of establishing that there are no genuine issues of fact as to whether the Insured Location Exclusion applies because the Premises qualify as "land owned by . . . an 'insured' on which a one or two family dwelling is being built as a residence for an 'insured.'" See Brownsey Aff. Ex. A, at 20-21, ECF No. 56-1; cf. Penn Millers Ins. Co. v. C.W. Cold Storage, Inc., 959 N.Y.S.2d 315, 318 (App. Div. 2013) ("[A]lthough defendant's showing . . . was sufficient to require the denial of plaintiff's motion, it was not sufficiently developed to justify summary judgment in

defendant's favor declaring that plaintiff's disclaimer of coverage was ineffective as a matter of law.").

Accordingly, there are triable issues of fact as to whether the Premises qualify as an "insured location" under the Policy. Both parties' motions for summary judgment on this issue are therefore denied.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not discussed above, the arguments are either moot or without merit.

For the reasons explained above, NGIC's motion for summary judgment is **denied,** and the Radoncics' cross motion for partial summary judgment is **denied.** The Clerk is directed to close Docket Nos. 54 and 62.

SO ORDERED.

Dated:   New York, New York
         June 8, 2022

                                    John G. Koeltl
                               United States District Judge

24